UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| OTIS HUGHES ) | 3:05-cv-0259-RCJ (VPC) |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| KEN HARMON, *et al*. ) | |
| Defendants. ) | June 18, 2007 |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendant Ken Harmon's ("defendant") motion for summary judgment (#57). Plaintiff opposed (#63) and defendant replied (#66). The court has thoroughly reviewed the record and the motions and recommends that defendant's motion for summary judgment (#57) be granted.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Otis Hughes ("plaintiff"), a *pro se* prisoner, is currently incarcerated at Stewart Conservation Camp ("SCC") in the custody of the Nevada Department of Corrections ("NDOC") (#3, #60). Plaintiff brings his complaint pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that law enforcement officers and hotel employees violated his Fourth and Fourteenth Amendment rights by conspiring to arrest him based on his race, without probable cause and with excessive force, by making negligent misrepresentations to plaintiff, and by converting his personal property (#3). Plaintiff names as defendants Reno police officers Ken Harmon, Officer Greenwood, and Officer Alexander; former Reno police chief Jim Weston; the Reno City Council; Hunter F. Baldwin, Jr. and Diana Baldwin, owners of the Keno 1 Motel ("Baldwin defendants"); Nina

Bartley, Keno 1 Motel manager; Doug Doe, Keno 1 Motel manager and John and Jane Does I-V.[1] *Id.*

Based on previous dismissals, the only claims remaining against defendant Harmon are count II for malicious prosecution and count IV for conspiracy, both of which arise out of separate incidents occurring in 2002 and 2003. Plaintiff alleges that on February 14, 2002, defendant Harmon unlawfully removed plaintiff from a liquor store, used excessive force to arrest him, unlawfully searched his person, and seized the key to his motel room as well as a receipt for $7,000.00 of the plaintiff's cash held in the Keno 1 Motel's guest safe. *Id*. Plaintiff further alleges that defendant Harmon then searched plaintiff's motel room at the Keno 1 Motel, where defendant seized (among other things) cocaine and cash in the amount of $2,297.00, and then arrested plaintiff on felony charges that were later dropped. *Id*. Plaintiff also alleges that on April 27, 2003, defendant Bartley (Keno 1 Motel's manager) and certain police officers conspired to cause the unlawful arrest of plaintiff based on his race (#3). Plaintiff contends that on April 28, 2003, he was arrested after defendant Bartley falsely claimed that plaintiff was selling crack cocaine from a hotel room at the Keno 1 Motel. *Id*. Charges were allegedly later dropped. *Id*.

The Court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th

---

[1] The court dismissed Officer Greenwood, former police chief Jim Weston, and the Reno City Council from this action on May 11, 2005 (#2). Defendants Officer Alexander and Nina Bartley have been dismissed pursuant to Fed. R. Civ. P. 4(m) because plaintiff failed to file proper proof of service (#40). On September 11, 2006, the District Court accepted this court's Report & Recommendation (#41) and dismissed counts I and III in their entirety as to defendant Harmon, and counts II and IV as to defendant Harmon with respect to the February 14, 2002 arrest (#50). On March 27, 2007, the District Court accepted this court's Report & Recommendation (#52) and dismissed count I in its entirety and count III's negligent misrepresentation claim as to the Baldwin defendants, and counts II and IV as to the Baldwin defendants with respect to plaintiff's February 14, 2002 arrest only (#67).

Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A. Discussion**

**1. Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, __ U.S. __, 126 S.Ct. 2572, 2576 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477

U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**B. Analysis**

**1. Statute of Limitations**

Defendant maintains that plaintiff was arrested on April 26, 2003, and that defendant submitted his probable cause declaration on April 27, 2003 (#57, p. 3). As such, defendant argues that plaintiff's complaint, which was received by the clerk's office on April 28, 2005, was filed after the two-year statute of limitations expired and it is time-barred. *Id*., pp. 3-4. Plaintiff admits he was arrested on April 26, 2003 and that defendant submitted the declaration of probable cause on April 27, 2003 (#63, p. 4). However, plaintiff argues that he mailed his civil rights complaint on April 25, 2003; therefore, his complaint is not time-barred (#63, p. 4).

**a. Law**

Section 1983 does not contain a statute of limitations; therefore, federal courts apply the forum state's statute of limitations for personal injury claims. *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000) *citing Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In Nevada, the statute of limitations for § 1983 actions is two years. N.R.S. 11.190(4)(e); *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989), *cert. denied*, 493 U.S. 860 (1989). Only evidence that would be admissible at trial may be considered by the court in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). The Ninth Circuit has repeatedly held that unauthenticated documents – documents that do not have a proper foundation – cannot be considered on a motion for summary judgment. *Orr*, 285 F.3d at 773.

4

**b. Analysis**

The evidence reveals that plaintiff was arrested on April 26, 2003, and that defendant filed his declaration of probable cause on April 27, 2003. *See* # 57, Declaration of Harmon, ¶¶ 2-3 and Exhibit 1. The clerk of court received plaintiff's complaint on April 28, 2003 (#3). Therefore, the two-year statute of limitations expired on April 27, 2003. At the time he filed his complaint, plaintiff was incarcerated by NDOC at Nevada State Prison (#3). Under the "prison mailbox rule," a complaint by a *pro se* prisoner is deemed "filed" when handed by the prisoner to a prison official for mailing. *Houston v. Lack*, 487 U.S. 266, 270-71 (1988). Since the plaintiff's complaint arrived at this court on April 28, 2003, it is almost certain that he handed it to prison officials for mailing, at the latest, by April 27, 2003. The court finds that the plaintiff's complaint was timely filed.[2]

**2. Count II – Malicious Prosecution**

Defendant argues he acted with legitimate law enforcement reasons unrelated to plaintiff's race in drafting the declaration of probable cause supporting the four criminal charges – trafficking in a controlled substance, unlawful sale of a controlled substance, possession with an intent to sell a controlled substance, and possession of a controlled substance (#57, p. 5). Plaintiff contends that the two informants defendant relied on, the managers of the Keno 1 Motel, were "crack heads," who showed signs of recent crack cocaine use, and that despite this, defendant did not arrest them because they are Caucasian, but arrested plaintiff because he is African-American

---

[2] The court notes that plaintiff's evidence is illegible, so it is unclear whether the "Inmate Account Transaction Request," which plaintiff contends proves he mailed his complaint on April 25, 2003, is even related to his complaint (#63, Exhibit A). Nor is the evidence authenticated or supported by an affidavit. *Id.* Moreover, the court recalls that in other papers filed with this court, plaintiff asserted that he mailed his complaint on November 14, 2004. *See* #44, p. 3 ("In this case, the complaint was filed November 14, 2004, the day on which the plaintiff mailed it to the court"). Because plaintiff's position has been inconsistent, and his evidence is not admissible, the court does not consider it.

5

(#63, p. 2).

### a. Law

To succeed in a section 1983 action for malicious prosecution, the plaintiff must establish that "the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). The Ninth Circuit has incorporated the relevant elements of the common law tort of malicious prosecution into the analysis under section 1983. *Id*. In Nevada, the elements of malicious prosecution are: (1) a prior criminal action being filed against the plaintiff; (2) lack of probable cause to commence the prior action; (3) malice; and (4) a favorable termination of the prior criminal charges. *Jordan v. State ex rel. Dept. of Motor Vehicles and Public Safety*, 121 Nev. 44, 48 (2005). Malicious prosecution actions are not limited to suits against prosecutors but may be brought against other persons who have wrongfully caused the charges to be filed. *Id.*, *citing Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002). Further, "'one who procures a third person to institute a malicious prosecution is liable, just as if he instituted it himself.'" *Awabdy*, 368 F.3d at 1068 (internal citations omitted).

To prove a denial of equal protection, a plaintiff must demonstrate that the defendants acted with an intent to discriminate against the plaintiff based on his membership within a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998).

### b. Count II Analysis

Defendant's evidence reveals that police officers other than the defendant arrested plaintiff on April 26, 2003 (#57, Declaration of Harmon, ¶¶ 2-3). Defendant filed a "Declaration of Probable Cause" within twenty-four hours of plaintiff's arrest. *Id*. Defendant stated in the

6

Declaration that he responded to a domestic dispute between Douglas Heathcote and Nina Bartley ("managers") at the Keno 1 Motel on April 25, 2003 (#57, Exhibit 1). The mangers informed defendant that they had purchased rock cocaine and/or had traded rock cocaine for rooms numerous times from several of the motel occupants, including plaintiff. *Id*. Additionally, the managers told defendant that plaintiff was staying in room twenty with his girlfriend, although it was registered under another name, and that the occupants of room nineteen were also selling cocaine. *Id*. Police surveillance that day revealed heavy foot traffic in and out of room nineteen, such that individuals would stay in the room for one minute or less and then leave, indicating street level drug sales. *Id*. Defendant obtained a search warrant for room twenty. *Id*. Officers located over sixty grams of cocaine, twenty-nine grams of marijuana, and evidence of plaintiff's occupancy in room twenty. *Id*. Plaintiff was not in room twenty at the time of the search. *Id*. The occupants of room nineteen gave officers permission to go into room nineteen, where they located rock cocaine, crumbs of cocaine, and bags with cocaine residue in plain view, and two bags of cocaine in the trap area of the toilet. *Id*. A criminal complaint was filed against the two occupants of room nineteen and the two occupants of room twenty, including plaintiff, for trafficking, unlawful sale, possession with intent to sell, and possession of cocaine. *Id*., Exhibit 2.

In opposition, plaintiff submits an unauthenticated copy of a Reno Police Department "Incident Report" drafted by defendant (#63, Exhibit B). Many of the facts are similar to defendant's "Declaration of Probable Cause;" however, the report contains some additional relevant facts. Upon defendant's arrival at the Keno 1 Motel, the female manager yelled to the defendant that the male manager, her husband, was a "crack head" and that he was making her smoke crack. *Id*. During a field test administered by defendant, the male manager showed signs

7

of having recently used crack cocaine and upon questioning, the male manager admitted to using crack cocaine prior to defendant's arrival. *Id*. The male manager told defendant that he had purchased cocaine from plaintiff approximately ten times over the previous three weeks and had also purchased cocaine from the occupant of room eight. *Id*. The male manager additionally stated that he had seen large quantities of cocaine in rooms eight and twenty. *Id*. The female manager told defendant that her husband was trading rooms for cocaine, that she had purchased cocaine from plaintiff one time, and that she had witnessed some of her husband's drug transactions with plaintiff. *Id*. Defendant collected drug paraphernalia from the managers' room, on their dresser, and in their drawers. The next day, defendant met with the district attorney and obtained a search warrant for rooms three, eight and twenty at the Keno 1 Motel. *Id*.

### (1) Probable Cause

Under Nevada law, want of probable cause is analyzed under an objective test, which is whether a reasonable person would have considered the action legally tenable, ignoring any subjective factors such as the person's expertise and beliefs. *Jordan v. Bailey*, 113 Nev. 1038, 1047-48 (1997). Defendant has presented admissible evidence which demonstrates that a reasonable person would have considered plaintiff a suspect in drug transactions and worthy of arrest.

It is undisputed that cocaine is a Schedule I controlled substance (#57, Declaration of Harmon, ¶6). It is unlawful to sell a controlled substance. N.R.S. 453.321(1)(a). Plaintiff's own evidence, particularly concerning plaintiff's sale of cocaine to the managers, reveals that it was reasonable that the defendant filed an arrest report and a declaration of probable cause for the sale of a controlled substance. This is also true for the charges of trafficking, possession with intent to sell, and possession of cocaine. Nevada law states that a person shall not knowingly or

8

intentionally possess a controlled substance, and that it is unlawful to possess a controlled substance for the purpose of sale. *See* N.R.S. 453.336(1) and N.R.S. 453.337(1). It is a class A felony for a person to knowingly or intentionally sell, manufacture, deliver or bring into Nevada a controlled substance, or to knowingly or intentionally, actually or constructively possess a controlled substance in the amount of 28 grams or more. N.R.S. 453.3385(3). Again, any reasonable person presented with the evidence outlined above, specifically that plaintiff occupied room twenty and had sold cocaine to the managers, would find it legally tenable that plaintiff was involved in drug transactions at the Keno Motel.

Plaintiff argues that because the managers were "crack heads," their information was unreliable (#63). However, despite their cocaine use on April 25, 2003, the information the managers provided was corroborated by searching rooms nineteen and twenty as well as the police surveillance. Plaintiff also claims that the managers gave defendant "false information" about him, but does not identify or present evidence of any alleged false information. Neither does plaintiff provide evidence that the charges against him were dropped, or why they were later dropped.

The court concludes that there is no issue of fact as to whether defendant had probable cause for plaintiff's arrest. Based on the evidence before the court, a reasonable person would have considered the declaration of probable cause and plaintiff's arrest objectively legally tenable.

**(2) Intentional Discrimination**

The court also concludes that there is no evidence that defendant acted with intent to discriminate against the plaintiff based on his race. *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998). Race is a suspect class for the purposes of an equal protection claim.

9

*N.A.A.C.P., Los Angeles Branch v. Jones*, 131, F.3d 1317, 1321 (9th Cir. 1997). Discriminatory intent "implies that the decision maker... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (citations omitted).

Plaintiff's sole "proof" of defendant's intentional racial discrimination is that the four individuals the Reno police arrested were African-American, while the Caucasian managers, despite their admitted drug purchases, use and possession, were not arrested. Plaintiff submits no affidavit or evidence to support his allegations. Considering the overwhelming evidence found in the rooms of the four individuals who were arrested, which pointed towards a large scale drug trafficking and sale operation, there were clearly legitimate reasons to arrest those in the motel rooms. The court concludes that there is no genuine issue of material fact as to whether defendant intentionally discriminated against the plaintiff based on his race.

### 3. Count IV – Conspiracy

To prove conspiracy pursuant to 42 U.S.C. § 1985(3), a plaintiff must demonstrate: "(1) conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person of class of persons of the equal protection of laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). To prove a section 1985 conspiracy between the government and private parties, the plaintiff must demonstrate a "meeting of the minds" by defendants to violate his constitutional rights. *Caldeira v. County of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989).

Defendant contends that plaintiff cannot prove a section 1985 conspiracy because there

was no deprivation of plaintiff's rights under section 1983 and no "meeting of the minds" (#57, p. 7). Plaintiff alleges that defendant Harmon conspired with the managers of the Keno 1 Motel to falsely arrest and prosecute plaintiff based on his race (#3, pp. 9, 14-15). Defendant's declaration to this court states that he never met the managers prior to April 25, 2003 (#57, Declaration of Harmon, ¶ 5). Plaintiff submits no evidence to refute this. There is also no evidence before the court showing a "meeting of the minds" or a plan to arrest plaintiff based on his race. Additionally, as the court concluded above, there is no evidence that defendant acted to intentionally discriminate against the plaintiff based on his race. The court grants summary judgment as to count IV.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff's claim is not time-barred. The court further concludes that defendant had probable cause to have plaintiff arrested on April 26, 2003, and there is no evidence that defendant acted with intent to discriminate against plaintiff based on his race. As such, the court recommends that defendant's motion for summary judgment with respect to counts II and IV as to defendant Harmon (#57) be **GRANTED**. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#57) be **GRANTED**.

**DATED:** June 18, 2007.

_____
**UNITED STATES MAGISTRATE JUDGE**